UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEXTER PICKETT,

                   Petitioner,

v.

UNITED STATES OF AMERICA,

                   Respondent.

No. 11-CR-630 (KMK)
No. 17-CV-8379 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

On August 14, 2012, pro se Petitioner Dexter Pickett ("Pickett" or "Petitioner") pled

guilty to one narcotics conspiracy charge and one firearms charge related to the narcotics charge,

and was sentenced to 120 months' imprisonment. Pickett has filed a Petition, pursuant to 28

U.S.C. § 2255, to vacate, set aside, or correct his sentence (the "Petition"). (*See* Pet. (Dkt. No.

1280).)[1] For the reasons stated herein, the Petition is denied.

## I. Factual History

On August 3, 2011, a grand jury returned Indictment S1 11-CR-630 ("the Indictment"),

(*see* Dkt. No. 4), charging Petitioner and 46 co-defendants with conspiring to distribute, and

possessing with intent to distribute, more than 280 grams of crack from in or about 2000 up to

and including in or about August 2011, in violation of 21 U.S.C. § 841 and 21 U.S.C. § 846.

(*See* Indictment ¶¶ 12–14.) The Indictment also charged Petitioner and most of his co-

defendants with the use, possession, and discharge of firearms during and in relation to that

narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c) and 2. (*Id.* ¶ 16.)

---

[1] All citations in this Order are to the criminal docket, Case No. 11-CR-630, unless noted
otherwise.

These charges followed an investigation of a violent street gang known as the "Elm Street Wolves," which operated in and around Yonkers during the time alleged in the Indictment. (*Id.* ¶ 1.) The Elm Street Wolves and their associates sold crack at, among other places, the intersection of Elm and Oak Streets. (*Id.* ¶ 2.) The Indictment alleged that certain members and associates of the Elm Street Wolves maintained firearms for use by other members and associates of the gang. (*Id.* ¶ 7.) These firearms would be stored at readily accessible locations and used to, among other things, protect the gang's territory and attack rival gang members. (*Id.*)

On August 14, 2012, pursuant to a plea agreement (the "Plea Agreement"), Petitioner pled guilty to: (i) conspiring to distribute, and to possess with the intent to distribute, at least 28 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and 21 U.S.C. § 846, and (ii) using, carrying, and possessing a firearm during and in relation to the narcotics conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*See* Judgment in a Criminal Case ("Judgment") 1 (Dkt. No. 578); Dkt. (minute entry for Aug. 14, 2012); Order Accepting Plea Allocution (Dkt. No. 505).)

The Court imposed its sentence on January 4, 2013. (*See* Dkt. (minute entry for Jan. 4, 2013); Judgment 2.) At sentencing, the Court adopted the calculation agreed to by the Parties and calculated by the Probation Department, and imposed a below-Guidelines sentence of 120 months' imprisonment, 60 months in connection with the narcotics charge and a mandatory consecutive sentence in connection with the firearms possession charge. (*See* Judgment 2.) Judgment was entered on February 5, 2013. (*See* Dkt. No. 578.)

Prior to his federal indictment in the instant case, Petitioner had been arrested and charged in New York Supreme Court in Westchester County (the "State Court") with state criminal offenses in connection with his possession of a handgun following a shooting at the

2

Schlobohm Housing Project in Yonkers, New York. (*See* Dkt. No. 1063.) On January 17, 2013, Petitioner was sentenced by the State Court to three and one-half years' imprisonment. (*See id.*; *see also* Dkt. No. 1079.)

Because Petitioner's state arrest preceded his federal arrest in this case, during the pendency of the federal proceedings, Petitioner was produced from state custody for court appearances pursuant to a federal writ of habeas corpus *ad prosequendum*. (*See* Dkt. No. 60.) After his sentencing in the federal case, Petitioner was returned to state custody in satisfaction of the writ, where he remained until the completion of his state sentence. On or about March 6, 2014, upon completion of the state sentence, Petitioner was released by state authorities to federal custody and began serving his federal sentence. (*See* Dkt. No. 929.)

While in federal custody, Petitioner has brought several challenges to his sentence and, specifically, the calculation by the Bureau of Prisons ("BOP") of his time in custody. (*See* Dkt. Nos. 929, 943.) Because Petitioner was in state custody during the pendency of the federal proceeding, BOP did not credit Petitioner for the time he spent in state custody until he completed his state sentence. (*Id.*) On January 27, 2015, BOP wrote the Court to ascertain whether the Court intended Petitioner's federal sentence to run concurrent with or consecutive to his state sentence. (*See* Dkt. No. 1051.) On February 27, 2015, the Court responded that it "said nothing about whether its sentence should be concurrent with the . . . state sentence for that shooting" and deferred to the BOP regarding "whether to incorporate the state sentence in its [own] calculations." (Dkt. No 1063.) BOP subsequently calculated Petitioner's federal sentence as consecutive to his state sentence. Petitioner then challenged this calculation through BOP's administrative remedy process. *See Pickett v. Recktenwald*, No. 16-CV-23, 2017 WL 2461916, at *2 (W.D. Pa. June 6, 2017), *aff'd sub nom. Pickett v. Warden McKean FCI*, 726 F. App'x 104

(3d Cir. 2018). On April 7, 2015, BOP denied Petitioner's application, determining that a retroactive concurrent designation was not appropriate. *See Pickett*, 2017 WL 2461916, at \*4.

That same date, Petitioner moved pro se before this Court to "correct" his sentence pursuant to Federal Rule of Criminal Procedure 36 so that the state sentence would be found, retroactively, to run concurrent with his federal sentence. (Dkt. No. 1079.) On February 1, 2016, Petitioner also filed a petition for a writ of habeas corpus in the Western District of Pennsylvania, the judicial district where Petitioner is imprisoned, seeking the same relief. (*See* Dkt No. 1 (No. 16-CV-23 (W.D. Pa.)).) On June 6, 2017, the Honorable Susan Paradise Baxter, United States Magistrate Judge, denied the petition, concluding that the BOP did not abuse its discretion in determining that a retroactive designation of the federal sentence was not appropriate and finding that there was no basis to disturb BOP's calculation of Petitioner's sentence and prior custody credit. *See Pickett*, 2017 WL 2461916, at \*4–6. On July 7, 2017, Petitioner filed a notice of appeal to the Third Circuit. (*See* Dkt. No. 19 (No. 16-CV-23 (W.D. Pa.)).)

On June 27, 2017, Petitioner again wrote to this Court regarding his appeal of the denial of his petition in the Western District of Pennsylvania, requesting that this Court "forward a letter to the Third Circuit," if the Court "concur[red] with the motion." (Dkt. No. 1248.) On July 11, 2017, the Court denied Petitioner's request. (Dkt. No. 1254.) Subsequently, on or about August 4, 2017, Petitioner's trial counsel moved by letter motion seeking a ruling that the time Petitioner spent in state custody be applied to his federal sentence or, in the alternative, that he be resentenced. (Dkt. 1260.) On August 28, 2017, the Court denied the motion, ruling that the propriety of BOP's determinations was not a question for this Court and denying the request to resentence the defendant. (Dkt. 1272.)

On October 30, 2017, Petitioner filed the instant Motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 1280.)

## II. Discussion

The Petition is based on the claim that Petitioner believed that the sentence imposed in the instant case would run concurrently with his State Court sentence and that he would not have pled guilty had he known that the plea agreement did not provide for the sentences to run concurrently. (*See generally* Pet.) The Petition fails on both procedural and substantive grounds.

### A. Standard of Review

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[2] "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and quotation marks omitted). To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that

---

[2] Title 28 U.S.C. § 2255(a) provides in full:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

5

constitutes a fundamental defect which inherently results in a complete miscarriage of justice."
*United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation and quotation marks omitted);
*accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No.
11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 679 F. App'x 41 (2d
Cir. 2017).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the
motion and the files and records of the case conclusively show that the prisoner is entitled to no
relief." 28 U.S.C. § 2255(b). Moreover, a hearing is not required where the petitioner's
allegations are "vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d
118, 130–31 (2d Cir. 2013) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).
To justify a hearing, the petition "must set forth specific facts supported by competent evidence,
raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the
petitioner] to relief." *Gonzalez*, 722 F.3d at 131. Finally, because Petitioner is appearing pro se,
the Court construes the Petition and his other submissions liberally and interprets them to raise
the strongest arguments that they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007);
*Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

### B. Analysis

#### 1. Statute of Limitations

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a
petition for relief pursuant to 28 U.S.C. § 2255 is subject to a one-year limitations period that
runs from the latest of four dates: (1) "the date on which the judgment of conviction becomes
final"; (2) "the date on which the impediment to making a motion created by governmental
action in violation of the Constitution or laws of the United States is removed, if the movant was

6

prevented from making a motion by such governmental action"; (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (4) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f).

None of these provisions is available to Petitioner. The conviction became final far more than a year before Petitioner filed his present Motion on October 30, 2017. *See* 28 U.S.C. § 2255(f)(1). As noted, the Petition challenges a judgment of this Court entered on February 5, 2013. (*See* Dkt. No. 578.) Pursuant to Federal Rule of Appellate Procedure 4(b), Petitioner therefore had until February 19, 2013, to file a notice of appeal from the February 5, 2013 Judgment. *See* Fed. R. App. P. 4(b)(1)(A); *see also Hiragli* v. *United States*, No. 03-CR-881, 2006 WL 1096392, at *2 (S.D.N.Y. Apr. 26, 2006) (holding that where a defendant does not file an appeal, the conviction becomes final 10 business days after the conviction was entered). Because Petitioner failed to do so, the Judgment became final as of that date, and pursuant to 28 U.S.C. § 2255(f)(1), AEDPA's one-year limitations period began to run. Accordingly, Petitioner's time in which to file a petition pursuant to § 2255 expired on February 19, 2013.

To the extent that at the time the Judgment became final it was not known whether Petitioner's federal sentence would run concurrently with or consecutive to his state sentence, his Motion is still time-barred pursuant to 28 U.S.C. § 2255(f)(4). BOP denied Petitioner's appeal of its determination that the federal sentence would run consecutive to his state sentence on or about April 7, 2015. *See Pickett*, 2017 WL 2461916, at *4. That date is therefore the latest possible date by which "the facts supporting the claim or claims presented" in the instant Motion could have been discovered. 28 U.S.C. § 2255(f)(4). Indeed, following BOP's decision not to

7

retroactively designate Pickett's federal sentence as concurrent, Pickett filed various challenges to his sentence in this Court and, later, in the Western District of Pennsylvania where he was incarcerated. (*See* Dkt. No. 1079.) *See also Pickett*, 2017 WL 2461916, at \*2. These challenges thus undercut any claim that he lacked an ability to contest this determination because of blocked library access or a belief that only his lawyer could file legal applications on his behalf. (*See* Pet. 28.) Petitioner did not, however, file the instant Motion until October 30, 2017—more than two years after BOP denied his administrative challenge. (*See* Dkt. No. 1280.)

Petitioner has not, moreover, provided any factual basis for his failure to file a timely Petition. As noted, based on the numerous applications Petitioner has filed, it is clear beyond dispute that he was well apprised of the fact that his federal sentence was running consecutive to his state sentence for more than two years before filing this Motion and that he had the wherewithal to file legal challenges to BOP's determination regarding his federal sentence. There is thus no basis to equitably toll the one-year limitations period. *See Braham v. State Ins. Fund*, No. 97-CV-7121, 1999 WL 14011, at \*4 (S.D.N.Y. Jan. 14, 1999) (explaining that a plaintiff's invocation of equitable tolling based on an inability to file was belied by the fact that the plaintiff had made other—even related—filings); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) (explaining that "lack of diligence" defeats claims of equitable tolling for habeas petitioners); *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (explaining that, to "secure equitable tolling," a party "must . . . demonstrate that [extraordinary] circumstances caused him to miss the original filing deadline").

Because the Petition was filed well past the one-year statute of limitations, it is denied.

### 2. Merits

Aside from being time-barred, Petitioner's claim is wanting on the merits. The heart of Petitioner's claim is that during his "plea acceptance, [he] was led to believe that both [his] state and . . . federal conviction time would run concurrently." (Pet. 4.) He further claims that it "was only later that [he] was informed it was not a part of [his] agreement," and that if he knew the sentences might be consecutive, he "would not have accepted" the agreement to plead guilty. (*Id.*)

There is no merit to Petitioner's claim. First, Petitioner cites nothing in the record that remotely suggests that any promises were made—by the Court, by the Government, or by his attorney—that the federal and state sentences would run concurrently. (*See* Letter from Assistant United States Attorney Andrew Bauer to Court (May 29, 2014) 1 (Dkt. No. 943).) Indeed, the state sentence had not yet been imposed when this Court imposed its sentence. (*Id.*) Thus, at the time he was sentenced by this Court, Petitioner did not know if *either* the state court or this Court would rule that the federal and state sentences would run concurrently. (*See id.*) This is consistent with the fact that Petitioner points to nothing in the Plea Agreement that suggests that this Court would make a determination that the federal sentence would be concurrent with any yet-to-be-imposed state sentence, or that the Parties agreed to argue that the federal sentence should be concurrent to any state sentence.

Second, there is nothing to Petitioner's suggestion that the conduct for which Petitioner was sentenced in State Court is the same as that for which he was sentenced in federal court. The federal firearms charge to which Petitioner pled did not incorporate the conduct underlying the state firearms charge. The latter involved a shooting by Petitioner at rival gang members; the former involved mere possession during and in relation to the narcotics conspiracy charged in the

Indictment. (*See* Letter from Assistant United States Attorney Andrew Bauer to Court (Feb. 9, 2015) 1 (Dkt. No. 1063).) Put another way, even if the issue of the interplay between the state and federal sentences had been raised, Section 5G1.3(b) would not have applied to mandate that any undischarged time on the state sentence run concurrent with the federal sentence, because the conduct at issue in the state court did not form the basis of any increase in the federal sentence. *See* Federal Sentencing Guidelines Manual § 5G1.3(b) (U.S. Sentencing Comm'n 2018). Instead, the question of whether to impose concurrent sentences would have been left to the discretion of the Court under § 5K2.23. *See id.* § 5K2.23. And, on that question, the record is clear that the Court simply did not consider the conduct at issue in State Court in determining what sentence to impose in this case. (*See* Dkt. No. 1063.) Thus, there is no basis for Petitioner to claim that there was any promise or even reasonable belief that this Court concluded that the federal and state sentences would run concurrently. *See Norville v. United States*, 151 F. Supp. 3d 329, 339–40 (S.D.N.Y. 2015) ("A defendant's erroneous, subjective ideas, produced by conversations with his counsel, in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea." (citation and quotation marks omitted)); *see also United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098 (2d Cir.1972) (same). Finally, to the extent the Petition could be liberally construed to be an objection to BOP's determination that the sentences would run consecutively, Petitioner must address that claim, as he has, in the district of confinement. (*See* Dkt. No. 1272.) *See also Pickett*, 2017 WL 2461916, at *6.

Accordingly, the Court independently dismisses the Petition on the merits.

## III. Conclusion

For the reasons discussed above, the Court dismisses the Petition.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close this case.

SO ORDERED.

DATED:     October 7, 2020
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

11